# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| DIBAKAR BARUA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZILLOW GROUP, INC., RICHARD BARTON, ALLEN PARKER, and JEREMY WACKSMAN,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY DEMAND** |

Plaintiff Dibakar Barua ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Zillow Group, Inc. ("Zillow" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Zillow; and (c) review of other publicly available information concerning Zillow.

## NATURE OF THE ACTION AND OVERVIEW

1.  This is a class action on behalf of persons and entities that purchased or otherwise acquired Zillow securities between February 10, 2021 and November 2, 2021, inclusive (the "Class

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 1

**ROSSI VUCINOVICH** P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Zillow is a real estate company that purports to offer customers "an on-demand experience for selling, buying, renting or financing with transparence." The Company's "Zillow Offers" business "buys and sells homes directly in dozens of markets across the country, allowing sellers control over their timeline."

3. On October 18, 2021, the Company announced that Zillow Offers suspended signing of new contracts through 2021 and would focus on its current inventory, citing "a backlog in renovations and operational capacity restraints." Zillow claimed that "[p]ausing new contracts will enable us to focus on sellers already under contract with us and our current home inventory."

4. On this news, Zillow's Class A share price fell $8.84, or 9.4%, to close at $85.46 per share on October 18, 2021, and Zillow's Class C share price fell $8.97, or 9.4%, to close at $86.00 per share on October 18, 2021, on unusually heavy trading volume.

5. Then, on November 2, 2021, after the market closed, Zillow announced that it would wind-down Zillow Offers because "the unpredictability in forecasting home prices far exceeds what we anticipated and continuing to scale Zillow Offers would result in too much earnings and balance-sheet volatility." As a result, third quarter 2021 financial results included "a write-down of inventory of approximately $304 million within the Homes segment as a result of purchasing homes in Q3 at higher prices than the [C]ompany's current estimates of future selling prices." Moreover, the "[C]ompany further expects an additional $240 million to $265 million of losses to be recognized in Q4 primarily on homes it expects to purchase in Q4." The "wind-down is expected to take several quarters and will include a reduction of Zillow's workforce by approximately 25%."

6. On this news, Zillow's Class A share price fell $19.62, or 23%, to close at $65.86 per share on November 3, 2021, on unusually heavy trading volume. Zillow's Class C share price fell $21.73, or 25%, to close at $65.47 per share on November 3, 2021, on unusually heavy trading volume.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, despite operational improvements, the Company experienced significant unpredictability in forecasting home prices for its Zillow Offers business; (2) that such unpredictability, as well as labor and supply shortages, led to a backlog of inventory; (3) that, as a result of the foregoing, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact on its financial results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 3

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Dibakar Barua, as set forth in the accompanying certification, incorporated by reference herein, purchased Zillow securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Zillow is incorporated under the laws of Delaware with its principal executive offices located in Seattle, Washington. Zillow's Class A common stock trades on the NASDAQ Exchange under the symbol "ZG," and its Class C common stock trades on the NASDAQ Exchange under the symbol "Z."

15.     Defendant Richard Barton ("Barton") was the Company's Chief Executive Officer ("CEO") at all relevant times.

16.     Defendant Allen Parker ("Parker") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendant Jeremy Wacksman ("Wacksman") was the Company's Chief Operating Officer ("COO") at all relevant times.

18.     Defendants Barton, Parker, and Wacksman (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 4

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Zillow is a real estate company that purports to offer customers "an on-demand experience for selling, buying, renting or financing with transparence." The Company's "Zillow Offers" business "buys and sells homes directly in dozens of markets across the country, allowing sellers control over their timeline."

### Materially False and Misleading
### Statements Issued During the Class Period

20. The Class Period begins on February 10, 2021. On that day, Zillow announced its fourth quarter and full year 2020 financial results. During the related conference call, Defendant Barton stated that the Company's "burgeoning sell-side business, Zillow Offers, ,proved durable through some bad weather." The Company "paused home buying to manage risk during the early days of the pandemic, but exited 2020 with our quarterly acquisitions pace returning to Q4 2019 levels." Defendant Parker stated that "[d]uring Q4, Zillow Offers benefited from operational improvements, stronger than expected home appreciation across the country, a strong customer value proposition and faster sales philosophy."

21. On February 12, 2021, the Company filed its annual report on Form 10-K for the period ended December 31, 2020, affirming the previously reported financial results. It stated, in relevant part:

> ***Our Zillow Offers Business Depends on Our Ability to Accurately Value Homes and Manage Inventory and a Failure to Do So May Have an Adverse Effect on Our Business and Financial Results.***
>
> The success of Zillow Offers depends in part on our ability to efficiently acquire, renovate and sell properties. We underwrite and price the homes we buy and sell through Zillow Offers using in-person evaluations and data science and proprietary algorithms based on a number of factors, including our knowledge of the real estate markets in which Zillow Offers operates. These assessments include the estimated time from purchase to sale, the cost of updating a home, market conditions and potential resale proceeds, closing costs and holding costs. These assessments may be inaccurate. Our pricing model may not account for submarket nuances – for

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 5

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

example, the location of a home on a hill or in a building – which could have a significant impact on price. If valuations are too low and/or fees are too high, conversion rates and customer satisfaction may be adversely impacted, as our offers may not be competitive. In addition, we may not discover latent home construction defects or environmental hazards or other conditions requiring remediation or impacting the value of the home in a timely manner, or at all, which may require us to write down the inventory value of those homes or prevent us from reselling them for the price we anticipated or at all. We may be unable to acquire or sell inventory at attractive prices, in a timely manner, or at all. We may also be unable to finance and manage inventory effectively. As a result, our revenue, gross profit and results of operations may be affected, which could have an adverse effect on our business, results of operations, and financial condition.

22. On May 4, 2021, Zillow announced its first quarter 2021 financial results in a press release that stated, in relevant part:

Recent highlights include:

- Consolidated first-quarter revenue of $1.2 billion and revenue for each segment exceeded the high end of the company's outlook for the first quarter.

- Consolidated net income was $52 million for the first quarter. Segment income (loss) before income taxes was $144 million, $(58) million and $(2) million for the IMT, Homes and Mortgages segments, respectively, for the first quarter.

- First-quarter Adjusted EBITDA exceeded the high end of the company's outlook for all three segments, resulting in consolidated Adjusted EBITDA of $181 million.

23. On May 4, 2021, Zillow held a conference call in connection with its first quarter 2021 financial results. During the call, Defendant Barton stated that "Zillow Offers continued to accelerate out of the pause we instituted in the pandemic, generating over $700 million in revenue and ***surpassing our internal expectations on revenue, EBITDA and unit level economics.***"[1] Defendant Parker agreed that "[g]rowth in Zillow Offers continued to reaccelerate in Q1" and "[r]esale velocity was above our expectations."

24. On August 5, 2021, Zillow announced its second quarter 2021 financial results in a press release that stated, in relevant part:

"Zillow is making rapid and significant progress toward building a seamless, integrated real estate experience for our customers and partners. Our strong second-quarter results show how well we're executing on the three- to five-year growth

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 6

objectives we announced in 2019," said Zillow Group co-founder and CEO Rich Barton. "***Of particular note, our iBuying business, Zillow Offers, continues to accelerate as we offer more customers a fast, fair, flexible and convenient way to move. Zillow Offers is proving attractive to sellers even in this sizzling-hot seller's market.*** Finally, we expect millennial-buyers, low interest rates, and the increasing adoption of location-flexible work policies, to fuel interest in moving for many years to come. And these movers will increasingly demand e-commerce-like solutions where Zillow excels."

Recent highlights include:

- Consolidated second-quarter revenue of $1.3 billion and revenue for the IMT and Homes segments exceeded the high end of the company's second-quarter outlook.

- Consolidated second-quarter gross profit was $538 million, up 92% year over year.

- Consolidated net income was $10 million for the second quarter. Segment income (loss) before income taxes was $134 million, $(59) million and $(18) million for the IMT, Homes and Mortgages segments, respectively, for the second quarter.

- Second-quarter Adjusted EBITDA of $183 million and Adjusted EBITDA for the IMT and Homes segments exceeded the high end of the company's second-quarter outlook. Adjusted EBITDA by segment was $218 million, $(29) million and $(6) million for the IMT, Homes and Mortgages segments, respectively, for the second quarter.

25. Also on August 5, 2021, the Company held a conference call in connection with its second quarter 2021 financial results. During the call, Defendant Barton touted:

> Zillow Offers continued to accelerate in Q2 with a record 3,805 homes purchased. We sold 2,086 homes generating a record $777 million in revenue on our Home segment, surpassing our internal expectations for both revenue and EBITDA. ***Importantly, the Zillow Offers value proposition of a fast, fair, flexible and convenient close has proved more than durable, even in this sizzling hot sellers market.***

26. During the August 5, 2021 call, Defendant Parker likewise stated that "[g]rowth in Zillow Offers continued to accelerate in Q2 and exceeded our expectations." The Company "made progress this quarter in improving [its] pricing models, including launching the Neural Zestimate, which ***sharpened*** [its] Offers strength."

27. On September 13, 2021, Defendant Wacksman represented Zillow at the Piper Sandler 2021 Virtual Global Technology Conference. The presenter noted that "the Company was able to really effectively rebuild inventory in the second quarter and this was more of a challenge

in 1Q" and asked defendant Wacksman to discuss "what changed in the interim and how the company is getting better able to react to the current pricing environment with sharply rising prices." Defendant Wacksman replied:

> Yes, I mean, you hit on it. Some of the inventory growth timing was just based on the fastest home price appreciation we – any of us had ever seen before and ***much stronger than both our internal and other third-party forecast we're seeing at the beginning of the year.*** So keeping up with rising home price appreciation, both on our acquisition side and then finding that price in the markets we're in, that continue to be a new and unique challenge coming out of pandemic. But I will say what we've learned is that ***this business, Zillow Offers, is a business that exists across all housing market cycles***, right? And that's been a question that we've touched on over the past few years. Is Zillow Offers more interesting in a hot or a cold or a medium market? Zillow Offers is a really interesting opportunity for our customers in all markets. . . . So, we were really encouraged to see while we saw these incredibly hot markets, ***the strength and the appeal for Zillow Offers just continues to grow and we're even more confident now that this is going to be a service really in all-weather markets.***

28. The above statements identified in ¶¶ 20-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, despite operational improvements, the Company experienced significant unpredictability in forecasting home prices for its Zillow Offers business; (2) that, as a result, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact on its financial results; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

29. The truth began to emerge on October 18, 2021 when the Company announced that Zillow Offers suspended signing of new contracts through 2021 and would focus on its current inventory. The Company issued a press release entitled "At Operational Capacity, 'Zillow Offers' to Focus on Signed Customer Contracts and Current Inventory; Suspends Signing of New Contracts Through 2021." It stated, in relevant part:

> ***Due to a backlog in renovations and operational capacity constraints, Zillow announced its Zillow Offers business will not sign any new, additional contracts to buy homes through the end of the year.*** Pausing on new contracts will enable Zillow Offers to focus operations on purchasing homes with already-signed

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 8

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

contracts, but have yet to close, and reducing the renovation pipeline. Zillow will continue to market and sell homes through Zillow Offers during this period.

"We're operating within a labor- and supply-constrained economy inside a competitive real estate market, especially in the construction, renovation and closing spaces," said Jeremy Wacksman, chief operating officer, Zillow. "We have not been exempt from these market and capacity issues and *we now have an operational backlog for renovations and closings. Pausing new contracts will enable us to focus on sellers already under contract with us and our current home inventory.*"

30. On this news, Zillow's Class A share price fell $8.84, or 9.4%, to close at $85.46 per share on October 18, 2021, and Zillow's Class C share price fell $8.97, or 9.4%, to close at $86.00 per share on October 18, 2021, on unusually heavy trading volume.

31. The above statements identified in ¶ 29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, despite operational improvements, the Company experienced significant unpredictability in forecasting home prices for its Zillow Offers business; (2) that such unpredictability, as well as labor and supply shortages, led to a backlog of inventory; (3) that, as a result of the foregoing, the Company was reasonably likely to wind-down its Zillow Offers business, which would have a material adverse impact on its financial results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

32. On November 2, 2021, after the market closed, Zillow announced its third quarter 2021 financial results in a press release and "its plan to wind down Zillow Offers." Zillow stated that "[t]he wind-down is expected to take several quarters and will include a reduction of Zillow's workforce by approximately 25%." In the press release, defendant Barton stated that "the unpredictability in forecasting home prices far exceeds what we anticipated and continuing to scale Zillow Offers would result in too much earnings and balance-sheet volatility."

33. As a result, third quarter 2021 financial results included "a write-down of inventory of approximately $304 million within the Homes segment as a result of purchasing homes in Q3

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 9

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

at higher prices than the [C]ompany's current estimates of future selling prices." Moreover, the "[C]ompany further expects an additional $240 million to $265 million of losses to be recognized in Q4 primarily on homes it expects to purchase in Q4." During the conference call held in connection with these results, defendant Parker explained that the "estimated losses primarily relate to homes that were under contract to purchase as of the end of Q3 that we expect to acquire during Q4 and that we expect to resell for less than purchased."

34. On November 2, 2021, after the market closed, *The Wall Street Journal* published an article entitled "Zillow Quits Home-Flipping Business, Cites Inability to Forecast Prices," pointing out that Zillow had once touted Zillow Offers as a venture that "could generate $20 billion a year." Noting that "[u]tralow mortgage-interest rates and a need for more space to work from home have driven robust home-buying demand in the past year and a half," the article quoted Benjamin Keys, professor of real estate at the Wharton School of the University of Pennsylvania: "It feels like this would be a hard time to lose money buying and selling houses. . . . This is a time frame where prices have gone up in a lot of places, dramatically." The article also cited an analysis of Zillow's national performance by KeyBanc Capital Markets, which "found [the Company] had listed 66% of homes at prices below what it had paid for them, with an average discount of 4.5%." Mike DelPrete, a real estate researcher and scholar-in-residence at University of Colorado, Boulder, stated that "[t]he fact that Zillow can't make it work shouldn't be the final death knell for iBuying. . . . The other companies are making improvements, and Zillow's not. They're still losing lots of money."

35. On this news, Zillow's Class A share price fell $19.62, or 23%, to close at $65.86 per share on November 3, 2021, on unusually heavy trading volume. Zillow's Class C share price fell $21.73, or 25%, to close at $65.47 per share on November 3, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 10

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

or otherwise acquired Zillow securities between February 10, 2021 and November 2, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Zillow's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Zillow shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Zillow or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Zillow; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

42.     The market for Zillow's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Zillow's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Zillow's securities relying upon the integrity of the market price of the Company's securities and market information relating to Zillow, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Zillow's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Zillow's business, operations, and prospects as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Zillow's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 12

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

45. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46. During the Class Period, Plaintiff and the Class purchased Zillow's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Zillow, their control over, and/or receipt and/or modification of Zillow's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Zillow, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

48. The market for Zillow's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 13

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

disclose, Zillow's securities traded at artificially inflated prices during the Class Period. On February 16, 2021, the Company's Class A share price closed at a Class Period high of $203.79 and its Class C share price closed at a Class Period high of $199.90 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Zillow's securities and market information relating to Zillow, and have been damaged thereby.

49. During the Class Period, the artificial inflation of Zillow's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Zillow's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Zillow and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50. At all relevant times, the market for Zillow's securities was an efficient market for the following reasons, among others:

(a) Zillow shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Zillow filed periodic public reports with the SEC and/or the NASDAQ;

(c) Zillow regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 14

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

(d) Zillow was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

51. As a result of the foregoing, the market for Zillow's securities promptly digested current information regarding Zillow from all publicly available sources and reflected such information in Zillow's share price. Under these circumstances, all purchasers of Zillow's securities during the Class Period suffered similar injury through their purchase of Zillow's securities at artificially inflated prices and a presumption of reliance applies.

52. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

53. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 15

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Zillow who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Zillow's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

56. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Zillow's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 16

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

continuous course of conduct to conceal adverse material information about Zillow's financial well-being and prospects, as specified herein.

58.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Zillow's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Zillow and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

59.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

60.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 17

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

for the purpose and effect of concealing Zillow's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Zillow's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Zillow's securities during the Class Period at artificially high prices and were damaged thereby.

62. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Zillow was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Zillow securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 18

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

65. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

66. Individual Defendants acted as controlling persons of Zillow within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68. As set forth above, Zillow and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS - 19

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004


members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED this 16th day of November, 2021.

By: s/ Benjamin T. G. Nivison
**ROSSI VUCINOVICH, P.C.**
Benjamin T.G. Nivison, WSBA Bar No. 39797
bnivison@rvflegal.com
1000 Second Avenue, Suite 1420
Seattle, WA 98104
Phone (425) 646-8003
Fax (425) 646-8004

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
*rprongay@glancylaw.com*
Charles H. Linehan
*clinehan@glancylaw.com*
Pavithra Rajesh
*prajesh@glancylaw.com*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160