The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIBAKAR BARUA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZILLOW GROUP, INC., RICHARD BARTON, ALLEN PARKER, AND JEREMY WACKSMAN,<br><br>Defendants. | No. 2:21-CV-01551-TSZ<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 14, 2022**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ)

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.   PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE STATEMENT .................. 3

   A.   Plaintiffs Fail to Plead a Misstatement About Pricing Methodology or Demand ......................................................................................... 3

   B.   Plaintiffs Fail to Plead a Misstatement Concerning Operational Improvements .................................................................................... 5

   C.   In Any Event, Most of the Alleged Misstatements Are Legally Inactionable ...................................................................................... 8

      1.   Plaintiffs Cannot State a Claim Based on Forward-Looking Statements ............................................................................. 8

      2.   Plaintiffs Cannot State a Claim Based on Zillow's Inactionable Puffery .............................................................. 8

II.   PLAINTIFFS FAIL TO PLEAD SCIENTER ........................................................ 9

   A.   Plaintiffs' Failure to Plead Motive Negates Any Inference of Scienter ........................................................................................... 9

   B.   Plaintiffs Do Not Sufficiently Allege Defendants Knew of Facts Rendering Their Statements False or Misleading .................................. 10

   C.   None of Plaintiffs' Alleged Indicia Reinforces a Strong Inference of Scienter ........................................................................................... 13

   D.   Viewed Holistically, Plaintiffs' Scienter Allegations Are Implausible ...... 14

III.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ....................................... 14

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – i

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Applestein v. Medivation, Inc.*,
861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014)........................7

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008) .........................................................................................................8

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) .......................................................................................12

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) .........................................................................................................5

*Callan v. Motricity Inc.*,
No. C11–1340 TSZ, 2013 WL 195194 (W.D. Wash. Jan. 17, 2013), *aff'd sub nom.*
*Mosco v. Motricity Inc.*, 649 F. App'x 526 (9th Cir. 2016) ......................................................9, 13

*City of Roseville Employees' Retirement System v. Sterling Financial Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017)......................7

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..................................................................................4, 5, 6

*In re Convergent Technologies Securities Litigation*,
948 F.2d 507 (9th Cir. 1991) ......................................................................................................2, 4

*Costabile v. Natus Medical Inc.*,
293 F. Supp. 3d 994 (N.D. Cal. 2018) ...........................................................................................5

*In re Countrywide Financial Corp. Securities Litigation*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..........................................................................................9

*In re Ditech Communications Corp. Securities Litigation*,
No. C 05-02406 JSW, 2007 WL 902549 (N.D. Cal. Mar. 22, 2007) .............................................6

*Ferreira v. Funko Inc.*,
No. LACV 20-02319-VAP (PJWx), 2021 WL 880400 (C.D. Cal. Feb. 25, 2021)......................8

*In re Finisar Corp. Securities Litigation*,
No. 5:11-cv-01252-EJD, 2017 WL 1549485 (N.D. Cal. May 1, 2017) .......................................13

*In re Intelligroup Securities Litigation*,
468 F. Supp. 2d 670 (D.N.J. 2006) ..............................................................................................15

*Irving Firemen's Relief & Retirement Fund v. Uber Technologies, Inc.*,
998 F.3d 397 (9th Cir. 2021) .....................................................................................................3, 15

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – ii

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

*Johnson v. Costco Wholesale Corp.*,
No. C18-1611 TSZ, 2019 WL 6327580 (W.D. Wash. Nov. 26, 2019).....................................10

*In re Jones Soda Co. Securities Litigation*,
393 F. App'x 507 (9th Cir. 2010)..................................................................................3, 10

*Limantour v. Cray Inc.*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006)........................................................... *passim*

*Macomb County Employees' Retirement System v. Align Technology, Inc.*,
39 F.4th 1092 (9th Cir. 2022) .........................................................................................7

*May v. KushCo Holdings, Inc.*,
No. 8:19-cv-00798-JLS-KES, 2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ........................14

*In re Metawave Communications Corp. Securities Litigataion*,
298 F. Supp. 2d 1056 (W.D. Wash. 2003)...............................................................12, 13

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) .......................................................................................15

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) .........................................................................................15

*Nacif v. Athira Pharma, Inc.*,
No. C21-861 TSZ, 2022 WL 3028579 (W.D. Wash. July 29, 2022) ..................................5, 11

*National Elevator Industry Pension Fund v. Flex Ltd.*,
No. 21-15050, 2021 WL 6101391 (9th Cir. Dec. 21, 2021)........................................................7

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ..............................................................................3, 7, 10

*In re Nokia Corp. Securities Litigation*,
Nos. 19-cv-3509, 19-cv-3982, 2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021).........................5

*Nuveen Municipal High Income Opportunity Fund v. City of Alameda*,
730 F.3d 1111 (9th Cir. 2013) .......................................................................................15

*In re NVIDIA Corp. Securities Litigation*,
768 F.3d 1046 (9th Cir. 2014).................................................................................11, 12

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) ...........................................................................................9

*In re Pivotal Securities Litigation*,
No. 3:19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020).........................5, 7, 12

*Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019).....................................................................................14

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – iii

**Skadden, Arps, Slate, Meagher &**
**Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ...........................................................................................9, 13

*Prodanova v. H.C. Wainright & Co.*,
   993 F.3d 1097 (9th Cir. 2021) ...........................................................................................9, 10

*In re Quality Systems, Inc. Securities Litigation*,
   865 F.3d 1130 (9th Cir. 2017) ..................................................................................................13

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ....................................................................................................13

*In re Rigel Pharmaceutials, Inc. Securities Litigation*,
   697 F.3d 869 (9th Cir. 2012) ......................................................................................................3

*Singh v. Schikan*,
   106 F. Supp. 3d 439 (S.D.N.Y. 2015) ........................................................................................5

*In re Solarcity Corp. Securities Litigation*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................................................7

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ....................................................................................................13

*Weston Family Partnership LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ...................................................................................................6, 8

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ....................................................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................................................................................6

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – iv

**Skadden, Arps, Slate, Meagher & Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Fatal to their claims, Plaintiffs' Opposition does not dispute, and thus concedes, that Zillow made the following ***disclosures*** about Zillow Offers ("ZO") before and during the Class Period:[1]

- ZO was a risky business that relied on Zillow's ability to "accurately value homes and manage inventory"; as a result, Zillow may overpay for homes to Zillow's detriment. (Ex. 1 at 9, 13.)

- Zillow established a profit guardrail range of 2% loss to 2% gain, which Zillow wanted to meet in order to scale (CC ¶¶ 86, 88), but by Q1 2021, Zillow's pricing models had not kept up with historic home price appreciation, meaning offer prices were too low. (Ex. 2 at 13.)

- As a result, Zillow was not buying as many homes as it aimed to, and for the homes it did buy and resell, it was seeing profit margins exceeding the guardrail, which threatened the scalability of ZO. (*Id.* at 13; CC ¶¶ 86, 88.)

- In response, Zillow, among other things: (i) adjusted its pricing methodologies; and (ii) reduced the scope of renovation work prior to resale, both allowing Zillow to offer more for homes to stay competitive and resell homes faster. (Ex. 2 at 13; Ex. 3 at 5; CC ¶ 88.)

- By August 5, 2021, profit margins on homes resold were ***still too high***, meaning that Zillow's offers on those homes months prior were ***still too low***; thus, Zillow had to "get better and better at pricing," and the biggest obstacle to ZO's success was "***ourselves***." (Ex. 3 at 10.)

The Opposition also does not dispute, and thus concedes, the following:

- In Q3, home price appreciation growth suddenly cooled. As a result, Zillow's price adjustments (which included GPOs) made months earlier, had unintentionally overshot the mark, causing Zillow to overpay for homes relative to their resale value, requiring a write-down of its inventory by $304 million and ultimately leading to the wind down of ZO.

- At the time of the challenged statements in August and September, Defendants did not know they would need to take a significant write-down on inventory or wind down ZO.

- Once Zillow decided to wind down ZO, it promptly disclosed its decision.

---

[1] Capitalized terms not defined herein have the same meaning as in Defendants' Motion to Dismiss (ECF No. 85 ("Motion" or "Mot.")). All emphases are added and internal citations and quotations are omitted unless stated.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (No. 2:21-cv-01551-TSZ) – 1

**Skadden, Arps, Slate, Meagher & Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

- During the Class Period, the Individual Defendants did not allegedly gain financially from, and thus had no reason to, conceal anything related to ZO.

- The four disclosures at the end of the Class Period announcing the write-down, the pause, and wind down of ZO did not reveal what Plaintiffs claim Zillow concealed: that Zillow used GPOs, and that reductions in renovation scope and pay caused a nationwide backlog.

Given these concessions and Zillow's disclosures, Plaintiffs are left with a flawed theory of securities fraud: (i) Defendants disclosed the challenges of ZO and measures taken to meet those challenges, but did not disclose enough detail to Plaintiffs' liking; (ii) Defendants made the statements with scienter even though they (a) are not alleged to have taken advantage of the purported fraud in any way and thus had no motive to conceal the "truth" about ZO, and (b) voluntarily revealed that "truth" weeks later; and (iii) the articles and press releases Plaintiffs claim revealed the so-called fraud to the market do not actually mention the allegedly concealed facts. The Opposition does not—because it cannot—address, let alone overcome, these deficiencies identified in the Motion.

First, knowing Zillow's disclosures preclude a finding of falsity, Plaintiffs ask the Court to ignore the disclosures altogether. Plaintiffs attempt to rewrite the Defendants' Motion, wrongly claiming Defendants are employing a "truth-on-the-market" defense. (Opp. 11); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) (truth on the market defense may be employed where facts known to the market from other sources cure the falsity of statements made). Defendants do not argue "truth on the market," but instead that no false statements were made to begin with because Zillow disclosed what Plaintiffs claim is missing. Courts, including this Court, dismiss securities claims on this very basis. *See Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129 (W.D. Wash. 2006) (Zilly, J.). As a result, Plaintiffs' attempts to plead a false or misleading statement fail.

The Opposition also confuses the relevant inquiry for scienter. The Opposition spends the majority of the scienter section trying to establish that the Individual Defendants knew details of Project Ketchup, such as the use of GPOs. Again, Defendants disclosed those pricing initiatives. But even if they did not do so to Plaintiffs' liking, merely alleging Defendants knew details is "not

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 2

**Skadden, Arps, Slate, Meagher &**
**Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

sufficient to allege that [defendants] believed that they were making false or misleading statements" in allegedly omitting them. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). The Complaint and Opposition lack any allegations showing "defendants believed that they made false or misleading statements" because they did not include the minutia of Project Ketchup in disclosures. *Id.* at 883. For example, no allegations support the inference that Defendants disclosed Zillow was adjusting its pricing methods to increase offer prices, but purposefully concealed the details and mechanics of those adjustments to deceive the market. That is fatal to Plaintiffs' claim. *Id.*

Nor do Plaintiffs explain why Defendants would do so such a thing when (i) there are no allegations they financially benefitted from doing so; and (ii) Defendants repeatedly disclosed pricing and operational struggles. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting theory that "does not make a whole lot of sense"). The Opposition has no answer for this, and instead pivots to argue Defendants took a risk with GPOs because they were "motivated to grow [acquisition] volume." (Opp. 33.) But Defendants' motives for a business decision are irrelevant; the question is the intent behind **statements** about that decision. *In re Jones Soda Co. Sec. Litig.*, 393 F. App'x 507, 509 (9th Cir. 2010) ("Faulting a company for poor business decisions does not equal scienter."). Plaintiffs' continued failure to articulate a plausible theory of fraudulent intent dooms their claims.

Finally, the Opposition's attempt to assert materialization of risk as an "alternative" loss causation theory fails. The Complaint simply does not plead it. Rather, the Complaint alleges loss causation by claiming the "relevant truth concealed by Defendants" was revealed "through a series of partial **corrective disclosures**." (CC ¶ 30.) Having pled loss causation based on these alleged disclosures, and conceded the disclosures did not correct prior statements, Plaintiffs cannot allege loss causation. *Irving Firemen's Relief & Ret. Fund v. Uber Techs. Inc.*, 998 F.3d 397, 410 (9th Cir. 2021). Plaintiffs' new materialization of risk theory of loss causation fails, in any event, as discussed below.

## I.   PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE STATEMENT

### A.   Plaintiffs Fail to Plead a Misstatement About Pricing Methodology or Demand

Plaintiffs cannot plead a false statement regarding increased home acquisitions due to

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 3

**Skadden, Arps, Slate, Meagher &**
**Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

changes to pricing methodology where Zillow disclosed the very facts Plaintiffs claim were missing. (Mot. 9-13.) Plaintiffs' arguments to the contrary fail. ***First***, Plaintiffs ask the Court to ignore Defendants' disclosures because they constitute a "truth-on-the-market" defense generally not considered at the pleading stage. (Opp. 11.) "Truth on the market" is a defense available after a plaintiff establishes a misleading statement, when the "failure to disclose material information may be excused [because] that information has been made credibly available to the market by other sources." *Convergent*, 948 F.2d at 513. Here, Defendants ***themselves*** disclosed the information at issue, and thus did not make a false statement in the first place. These disclosures preclude a finding of falsity (*see* Mot. 10-12), and the "truth on the market" defense is irrelevant.[2]

***Second***, Zillow's disclosures regarding "sharpening pricing models," "testing price elasticity" and "figuring out how to improve our Offer strength" refer to pricing methodologies such as GPOs. (Mot. 6-7.) Plaintiffs assert that these disclosures refer only to a specific "algorithmic pricing model" distinct from GPOs or other aspects of Zillow's pricing, and that the Court must accept Plaintiffs' interpretation at the pleading stage. (Opp. 10, 13.) The court in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), rejected this ***exact argument***. In that case, plaintiffs interpreted Tesla's statement it began using "manufacturing equipment" as a reference to automated equipment, and alleged it was false because Tesla had not yet developed automated assembly lines. *Id*. at 1193. The court refused to "accept as true [the] assertion that installation of 'manufacturing equipment' actually means installation of 'automatic manufacturing equipment,'" holding: "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise." *Id*.

Here, Plaintiffs provide no reason to accept their assertion that Zillow's generally-worded statements about "offer strength" and "pricing models" were in fact a reference to a specific algorithm, to the exclusion of anything else, including GPOs. Tellingly, none of the FEs say as much.

---

[2] *Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012) ("truth on the market" irrelevant where "Defendants argue that they disclosed all required information, not that they failed to make required disclosures but should be excused because other sources have already made the same information available").

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 4

**Skadden, Arps, Slate, Meagher &**
**Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

Rather, as shown in the Motion (at 11)—and ignored in the Opposition—those witnesses **confirm** they are one in the same. (CC ¶¶ 102, 114, 123, 151.) Plaintiffs cannot rest on "bald assertions." *Nacif v. Athira Pharma, Inc.*, 2022 WL 3028579, at *13 (W.D. Wash. July 29, 2022) (Zilly, J.).

*Third*, Plaintiffs argue Defendants did not (i) use the magic word "GPO" or provide a technical description of how they worked; or (ii) explain they were "risky" and rendered any uptick in demand "artificial." (Opp. 11, 17.) "Merely object[ing] to the specificity and comprehensiveness of [Zillow's] various disclosures" does not establish falsity because "it is well established that the PSLRA does not impose a duty of completeness." *Juniper*, 880 F. Supp. 2d at 1066.[3] Critically missing is any explanation as to why, absent the granular mechanics of how Zillow increased prices, the statements "create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Zillow told the market it was struggling with pricing and was adjusting its models. Nothing more is required. Further, "companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures." *Singh v. Schikan*, 106 F. Supp. 3d 439, 448 (S.D.N.Y. 2015).[4]

### B.   Plaintiffs Fail to Plead a Misstatement Concerning Operational Improvements

Plaintiffs next argue that statements regarding operational improvements were false because Zillow allegedly did not disclose the improvements included "cut[t]ing its renovation pay rates and reduc[ing] the scope of renovations," which allegedly caused contractors to stop working with Zillow leading to a "severe" backlog in inventory. (Opp. 18.) This claim fails for many independent reasons.

*First*, Zillow disclosed in May that it reduced the scope of renovation projects prior to resale when Zillow attributed a reduction in "renovations and selling costs" to getting "better and smarter

---

[3] *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *11 (N.D. Cal. July 21, 2020) (no falsity where witnesses "merely suggest [defendant] did not provide a more fulsome report on its competitive landscape, sales strategy, and financial outlook"); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1012 (N.D. Cal. 2018) ("Plaintiff has not explained how [the] failure to provide more granular detail regarding the timing of the prepayments created" a misimpression).

[4] Plaintiffs claim analysts understood Zillow's discussion of price improvements to be about changes to its pricing models. (Opp. 12-13.) "[A]nalysts' conclusions do not change the fact that [Zillow] made robust disclosures related" to pricing changes. *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *17 (S.D.N.Y. Mar. 29, 2021). Further, this argument presupposes GPOs are different from pricing model changes. Plaintiffs point to post-Class Period reports, but do not contend *any* reports distinguished Class Period statements on pricing with a later revelation about GPOs specifically.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 5

Skadden, Arps, Slate, Meagher &
Flom, LLP
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

about what [projects] need[ ] to be done and what the customer is willing to pay for." (Ex. 2 at 16; *see* Mot. 16.) The Opposition does not contend there was anything deficient about this disclosure. *See Juniper*, 880 F. Supp. 2d at 1066 (disclosure of allegedly omitted facts precludes falsity). Instead, Plaintiffs again wrongly invoke "truth-on-the-market" (Opp. 20), which is a red herring (*supra* II.A).

Zillow also disclosed operational challenges. Zillow disclosed it relied on third-party renovation contractors and that it could not guarantee sufficient "access to their services." (Ex. 1 at 15.) Zillow also disclosed on August 5 that while there were certain improvements, Zillow still saw areas for "continued operational improvements." (Ex. 3 at 8.) On September 13, Defendant Wacksman further disclosed Zillow was facing "more acute" "operational challenge[s]" due to increased demand from sellers. (Ex. 6 at 8.) These disclosures further preclude a finding of falsity, but the Opposition ignores them entirely. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) (affirming dismissal when "positive" statements were qualified and not definitive).

***Second***, Plaintiffs rely on the FEs to argue that even if Zillow did disclose the reduced renovation scopes, Zillow did not disclose that the change was "having a severe negative impact on Zillow's housing inventory" causing a "severe," "nationwide backlog." (Opp. 6, 20-21, 31.) To allege securities fraud using confidential witnesses, plaintiffs must describe the witnesses "with sufficient particularity to establish their reliability and personal knowledge," and the witnesses' statements themselves must be "detailed," not based on "unreliable hearsay," and not "conclusory." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-97 (9th Cir. 2009); (*see* Mot. 24-25).

Plaintiffs' FE allegations fall well short of this standard, and fail as a matter of law. (Mot. 17-18.) FE-5 claims he knew "at least five contractors" who did not work with Zillow due to scope reductions. (CC ¶ 139.) Anecdotes about five, unidentified contractors do not support an allegation of widespread issues with contractors, let alone that such issues caused backlogs. *See In re Ditech Commc'ns Corp. Sec. Litig.*, 2007 WL 902549, at *8 (N.D. Cal. Mar. 22, 2007) ("anecdotal information" does not show widespread sales decline). Similarly, FE-3 alleges in July 2021 Zillow bought "more homes than it had the capacity to renovate" in the Southwest (CC ¶ 142), with no detail

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 6

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

as to how many homes or how this impacted regional or national operations. Indeed, he claims renovation changes occurred in some markets "but not all of them," **contradicting** any notion of a widespread issue. (CC ¶ 137); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (witnesses "unreliable" when they "contradict" each other).[5] Plaintiffs ignore these defects.

The **only** allegation of a supposed "nationwide" problem comes from FE-4, who alleges it was discussed at meetings. But he provides no details of the extent of backlogs allegedly discussed, the cause, or any other facts to support his personal view. Speculative allegations and unsupported "negative characterizations" are insufficient. *Nguyen*, 962 F.3d at 416 (rejecting witness allegations "high on alarming adjectives" but "short on the facts" such as the number, scope and severity of incidents).[6] The Opposition does not address, let alone remedy, these legal deficiencies either.

**Third**, even if Plaintiffs sufficiently alleged a "severe" backlog due to disrupted relationships with contractors at the time of the statements (they do not), they still have not shown how this would render Zillow's statements of "durable operational improvements" false or misleading because Plaintiffs do not dispute that Zillow (i) did in fact make other "durable" operational improvements; and (ii) did disclose "acute" "operational challenges." *See Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) (rejecting "allegations about 'serious operational problems'" that did not "directly contradict[]" statements about success); (Mot. 16-18).

Instead, Plaintiffs argue that once Defendants touted operational improvements, they were required to "disclos[e] adverse information that cuts against the positive information." (Opp. 19.) Not so. The law is that a company must not **mislead**—*i.e.*, create a materially false impression—not that it must disclose something negative any time it discloses something positive. *See Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1100 (9th Cir. 2022) (that defendant touted

[5] *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1001 (N.D. Cal. 2017) (witness account insufficient where "it is unclear how many contracts [in backlog]" were at issue and to "what extent" they "affected the key operating metrics"); *Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1136 (E.D. Wash. 2013) (citing case rejecting "attempted extrapolation of nationwide financial data based solely on the witness's knowledge of a local branch").

[6] *Limantour*, 432 F. Supp. 2d at 1144 (allegation company was "confronting and discussing scheduling slippages" is "too general and too vague to support a securities fraud claim"); *Pivotal*, 2020 WL 4193384, at *11 (complaint did not plead "anything beyond vague assertions from former employees that [defendant] faced sales and customer growth issues").

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 7

**Skadden, Arps, Slate, Meagher & Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

"positive facts about China," does not mean it had "a duty to disclose negative facts in order to make the statements not misleading"); *Weston*, 29 F.4th at 620 (company "must disclose a negative internal development only if its omission would make other statements materially misleading").

The decision in *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), on which Plaintiffs rely, does not say anything differently. There, plaintiffs alleged the company announced $143 million in anticipated revenue from backlogged contracts without disclosing $12 million was subject to stop-work orders. *Id.* at 986. The court held that because the omitted information—the stop-work orders—directly contradicted the statement about $143 million in anticipated revenue, that statement was misleading. Here, a renovations backlog is not inconsistent with Zillow making operational improvements. Zillow's disclosures of operational challenges, as discussed, further distinguish this case from *Berson*. *See Ferreira v. Funko Inc.*, 2021 WL 880400, at *13 (C.D. Cal. Feb. 25, 2021) (distinguishing *Berson*, where disclosure of "higher reserves" could "referenc[e] the very excess or obsolete inventory Plaintiffs contend Funko tried to hide").

### C. In Any Event, Most of the Alleged Misstatements Are Legally Inactionable

#### 1. Plaintiffs Cannot State a Claim Based on Forward-Looking Statements

Certain statements identified in the Complaint—such as Zillow was "back on track" and expected growth that "will favorably impact revenue in future quarters"—are inactionable forward-looking statements. (Mot. 19-21.) Plaintiffs answer that they do not actually challenge those statements, thus conceding they are not in dispute. (*See* Opp. 21.) As to the statement "durable operational improvements," Plaintiffs repeat their same argument that the alleged severe inventory backlog rendered this false. That claim fails for the reasons discussed. (*See supra* I.B, *infra* II.B.)

#### 2. Plaintiffs Cannot State a Claim Based on Zillow's Inactionable Puffery

The Motion (at 21-22) identified six statements as puffery. The Opposition ignores three (CC ¶¶ 181, 183, 193), thus conceding they are inactionable. *Callan v. Motricity Inc.*, 2013 WL 195194, at *9 (W.D. Wash. Jan. 17, 2013) (Zilly, J.). Plaintiffs' scattered arguments as to the other statements fail. *First*, Plaintiffs argue the statement that a "step-up in pace" of purchases "resulted from the

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 8

**Skadden, Arps, Slate, Meagher & Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

progress we have made in strengthening our pricing models" is objectively verifiable. (Opp. 23; CC ¶ 184.) The court in *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 606 (9th Cir. 2014), rejected a similar argument, holding that attributing a growth "track record" to general causes was "vague" and did not "set out with specificity the reasons for" growth. *Id.* Here, Zillow's general reference to "strengthened pricing models" was not specific and thus is inactionable.

**Second**, Plaintiffs contend a puffing statement can become actionable if the topic is of "central importance." (Opp. 23.) Plaintiffs' cases (*id.*) do not support this claim, as they involved concrete statements about compliance with guidelines or regulations, not puffery. In contrast, Zillow's statements, such as ZO is "back on track," are the type of "inherently subjective puffing" courts hold inactionable even when about core aspects of a company. *Limantour*, 432 F. Supp. 2d at 1146 (vague statements of overall long-term growth inactionable); *Apollo*, 774 F.3d at 606 (same).

**Third**, relying on two out-of-circuit cases, Plaintiffs broadly claim that statements made in response to analyst questions cannot be puffery. (Opp. 23; CC ¶ 191.) That is not the law in this Circuit or this Court. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (statements made during analyst call were puffery); *Callan*, 2013 WL 195194, at *23 (statement "contract was 'on track' [] made in response to a question by an analyst" was puffery).

**Fourth**, Plaintiffs argue that even puffery "can be actionable . . . 'where material, nondisclosed information undermines the truth of those statements.'" (Opp. 24.) But Plaintiffs' own case (*id.*) shows courts apply this exception only in rare situations with allegations of dramatically contradictory information. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1153 (C.D. Cal. 2008) ("It cannot be emphasized enough that in the vast majority of cases such statements would be nonactionable puffery.") As shown (*supra* I.A-B), this is not one of those cases.

## II.   **PLAINTIFFS FAIL TO PLEAD SCIENTER**

### A.   **Plaintiffs' Failure to Plead Motive Negates Any Inference of Scienter**

The Complaint fails from the outset because there is no "persuasive or plausible" reason Defendants would defraud investors in the way Plaintiffs allege. *Prodanova v. H.C. Wainright &*

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 9

Skadden, Arps, Slate, Meagher &
Flom, LLP
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

*Co.*, 993 F.3d 1097, 1107 (9th Cir. 2021). Plaintiffs claim Defendants intentionally concealed details about changes to ZO (or their consequences), only to reveal the "truth" a few weeks later, without any allegations of reaping any benefit in the interim. Even less plausible, Defendants supposedly did all of this while, at the same time, admitting Zillow was its own biggest hurdle and repeatedly disclosing the very risks and struggles Plaintiffs claim were hidden. Courts reject theories of fraud "divorced from common experience," *id.*, that do not "make a whole lot of sense." *Nguyen*, 962 F.3d at 415; (Mot. 30 (collecting cases)). Plaintiffs' attempt to gloss over this fundamental defect fails.

***First***, Plaintiffs argue Zillow was "so motivated to grow [acquisition] volume that they took a risky bet [with GPOs] that the market would continue its rapid appreciation" due to "pressure to live up to the targets announced." (Opp. 31-33.) But scienter concerns Defendants' state of mind in ***making public statements***, not reasons for pursuing a business strategy. *Jones Soda*, 393 F. App'x at 509. That Zillow wanted to grow is not a reason to deceive investors about how it was doing so. To the contrary, a desire to grow is a generic motive of ***every*** company irrelevant to scienter. *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *20 (W.D. Wash. Nov. 26, 2019) (Zilly, J.) (motive "to keep costs low to maintain profits and growth is too vague and conclusory to state a claim").

***Second***, Plaintiffs argue a lack of motive is not dispositive of scienter. (Opp. 33.) But "the lack of a plausible motive certainly makes it ***much less likely*** that a plaintiff can show a strong inference of scienter. Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will [courts] overlook the failure to allege a plausible motive." *Prodanova*, 993 F.3d at 1108. Plaintiffs' allegations fall well short of this high bar. Thus, their continued inability to answer the simple question of "why?" undoes their claim.

**B.     Plaintiffs Do Not Sufficiently Allege Defendants Knew of Facts Rendering Their Statements False or Misleading**

The Opposition's primary argument in favor of scienter is that Defendants must have known about Project Ketchup, specifically the GPOs and the renovation scope reductions. (Opp. 25-32.) Defendants do not dispute they were aware of Project Ketchup. Indeed, they ***disclosed*** the initiatives

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 10

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

known internally as "Project Ketchup," if not by name, thereby affirmatively undermining any fraudulent intent. (Mot. 6, 11-12, 16-17.) Regardless, "[a]ny inference of scienter requires more than" alleging Defendants knew of allegedly undisclosed facts. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). Plaintiffs must allege facts showing Defendants "intentionally misled investors, or acted with deliberate recklessness, by not disclosing the [alleged true facts] sooner." *Id*.

Thus, to plead scienter for the alleged misstatements Plaintiffs have identified, Plaintiffs must allege particularized facts establishing a strong inference that: (i) while disclosing Zillow was taking steps to improve its offer prices to match historic price appreciation, Defendants intentionally, or deliberately and recklessly, misled the market by not identifying GPOs by name and describing how they worked; and (ii) while discussing cost savings associated with certain "operational improvements," Defendants knew, but failed to disclose, that some of those improvements had resulted in a "severe" "nationwide backlog" of renovations. Plaintiffs fail to do so.

**Pricing Initiatives**. Plaintiffs do not allege facts suggesting Defendants knew, or recklessly disregarded, their disclosures about pricing adjustments would be misleading if they did not specifically discuss the mechanics of GPOs. Rather, as discussed (*supra* I.A), Zillow affirmatively disclosed its ongoing pricing adjustments, which included GPOs. There are no allegations that Defendants knew their failure to specifically identify GPOs could be misleading, when Defendants already had disclosed publicly that Zillow was, in fact, applying pricing adjustments. This is fatal to Plaintiffs' claim. *See Nacif*, 2022 WL 3028579, at *12 (no scienter where plaintiffs do not claim defendant knew "consequences to investors of failing to disclose" information).

To the extent Plaintiffs claim Defendants knew at the time of the statements that Zillow had overpaid for homes to such a degree it would cause the end of ZO, there are no supporting allegations. The FEs proclaim it was "widely known" Zillow was "aggressively adjusting [its] home offer pricing upwards." (Opp. 25-26; CC ¶ 107.) The vagueness of those allegations aside, *see Limantour*, 432 F. Supp. 2d at 1144, again, at most, they show Defendants knew GPOs were being used, but not that they knew as of August 5 or September 13 that GPOs had resulted in dramatic overpayments which

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 11

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

would lead to the end of ZO. To the contrary, on August 5, Defendants disclosed offer prices were *still too low* and they had to be "better at pricing" to keep up with the market (Ex. 3 at 10), eliminating any notion they knew at that time of the eventual consequences of their pricing initiatives.

Plaintiffs next highlight allegations that in May 2021, certain personnel thought Zillow was "intentionally paying too much for homes," but the people in charge of the pricing initiatives were "adamant" they worked properly. (Opp. 15; CC ¶¶ 123-25.) These allegations fail. ***First,*** there is an inherent multi-month lag in the buying/reselling process and Plaintiffs do not even allege homes subject to these pricing initiatives, including GPOs (which allegedly began in April (CC ¶ 109)), had even been resold by May. Thus, there is nothing to suggest anyone could have known by then that Zillow had paid "too much for homes," let alone the extent. *See Limantour*, 432 F. Supp. 2d at 1144. ***Second***, at most these allegations show a disagreement about GPOs, but "disagreement within the company . . . does not support an allegation" of scienter. *Pivotal*, 2020 WL 4193384, at *17; (Mot. 15). ***Third***, Zillow disclosed in May and August that its 5-6% profit was too high for its scaling goals and that the adjustments would help get back towards the original +/-2% profit loss guardrail; in other words, Zillow ***disclosed*** it would rather "overpay" than gain a 6% profit. (Ex. 2 at 13.) These voluntary disclosures are inconsistent with any intent to mislead. (Mot. 28 (collecting cases).)

**Renovation Backlogs**. Plaintiffs rely on FE allegations to establish scienter for Zillow's statements about "operational improvements." (Opp. 27.) To do so, Plaintiffs must allege specific facts tying FEs' accounts to Individual Defendants. *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1068 (W.D. Wash. 2003). They do not. FE-3 claims he complained about capacity to his manager, who reported to certain SVPs who allegedly "in turn worked directly with Defendant Barton." (CC ¶ 146.) FE-3 does not allege when this occurred in relation to the statements at issue, or that his manager reported the complaint to the SVPs, let alone Mr. Barton. *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1201 (N.D. Cal. 2008) ("[A] temporal mismatch between a CW's statement and a Defendant's statement results in a failure to plead with particularity."); *NVIDIA*, 768 F.3d at 1064 (rejecting claim as "CW1 does not actually know [to] whom" complaint was shared). The ***only***

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 12

**Skadden, Arps, Slate, Meagher &
Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

allegation mentioning Individual Defendants is FE-3's claim there was a meeting he "***thought***" took place in "July or August 2021," in which Mr. Barton discussed a plan to address a backlog. (CC ¶ 147.) FE-3 does not say when this occurred (if it was before Mr. Barton's August 5 statements), or what, if at all, was said about the extent of the alleged backlog, its impact, or the "plan."[7]

In any event, Plaintiffs do not allege that if Defendants were aware of any purported "severe" backlog, they knew it was due to reductions in renovation scope and pay that caused contractors to stop working with Zillow, as opposed to larger supply and labor chain constraints arising from the pandemic—which Zillow disclosed to the market and to which Zillow later attributed the backlog on October 18 and November 2. (Ex. 1 at 9; CC ¶¶ 222, 237.)

## C.    None of Plaintiffs' Alleged Indicia Reinforces a Strong Inference of Scienter

Plaintiffs also raise alleged "circumstantial" indicia of scienter, none of which is availing. ***First***, Plaintiffs argue the "temporal proximity" between the August 5 and September 13 challenged statements and the November 2 announcement of the end of ZO supports scienter. (Opp. 30-31.) But Plaintiffs ignore that courts, including this one, have held that much ***shorter*** gaps of time than the two- and three-month gap at issue here were insufficient to create an inference of scienter. *See, e.g.*, *In re Metawave*, 298 F. Supp. 2d at 1081 (three-week gap insufficient). Further, the "temporal proximity" theory relies on the assumption that no "intervening events" led to the inconsistent statements. (Mot. 27.) Here, an unforeseen event—the slowdown in home price appreciation in Q3—caused Zillow's pricing adjustments in Q2 to overshoot their mark when it came time to resell homes months later. Plaintiffs ignore this dynamic, conceding the point. *Callan*, 2013 WL 195194, at *9.

***Second***, Plaintiffs argue a "defendant's extensive discussion of the subject of the fraud in public statements supports scienter." (Opp. 31.) Just because a defendant speaks about a broad topic does not mean he has information ***contradicting*** his statements on that topic. *Intuitive*, 759 F.3d at

---

[7] Plaintiffs' cases (Opp. 25-27) highlight what the Complaint lacks and why their claims fail. *Reese v. Malone*, 747 F.3d 557, 573 (9th Cir. 2014) (officer had letter stating pipe would leak when she said opposite); *S. Ferry LP, No. 2 v. Killinge*r, 542 F.3d 776, 785 (9th Cir. 2008) (core operations claim requires "detailed and specific allegations about management's exposure to fact[s]"); *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017) (defendants discussed key info and sold stock); *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (same).

**Skadden, Arps, Slate, Meagher & Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

1062-63 (plaintiffs must allege defendants had facts contradicting statements). Plaintiffs effectively read the PSLRA's stringent scienter standard out of the statute, collapsing making a statement with inferring knowledge of its falsity. They provide no authority for this re-write of the law.[8]

*Finally*, Plaintiffs claim "the sheer magnitude" of the write-down supports scienter. (Opp. 31-32.) That allegation, typically made in accounting error cases, is insufficient to establish scienter alone. *See May v. KushCo Holdings, Inc.*, 2020 WL 6587533, at *6 (C.D. Cal. Sept. 25, 2020). The magnitude of a financial disclosure is irrelevant to scienter when defendants "could not have known the significance" at the time of the statements. *Id.* Here, as shown, Plaintiffs do not allege Defendants knew, or could have known, as of August or September that pricing initiatives caused such an overpayment for homes to warrant a significant write-down, given the lag between buying/reselling and the unforeseen Q3 slowdown in home price appreciation growth.[9]

### D.   Viewed Holistically, Plaintiffs' Scienter Allegations Are Implausible

Given the lack of any plausible theory of motive, the more compelling inference is a wholly innocent one: Zillow entered into a new business, disclosed the risks associated with the business, experienced challenges with pricing and operations, and disclosed measures taken to address them; those measures did not succeed due to unforeseen events and Zillow's admitted shortfalls, and once Zillow realized this, it made a business decision to end ZO to avoid further risk to the business and shareholders and promptly informed the market. (Mot. 27.) Defendants' constant transparency shows there was no fraud. The Opposition ignores this counter-inference which alone warrants dismissal.

## III.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

None of the four alleged partial disclosures on which Plaintiffs rely to plead loss causation disclosed the allegedly concealed facts: (i) Zillow used GPOs to increase prices; and (ii) reductions

---

[8] *Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*, 780 F. App'x 480 (9th Cir. 2019), is inapposite. There, the court simply made the inference that one defendant, who indisputably knew an undisclosed fact, shared that fact with another defendant because they worked on a relevant project and made public statements about that project together.
[9] Further, Plaintiffs do not even sufficiently allege the $304 million write-down for Q3 was of significant magnitude to create any inference of scienter when it was a mere 7% of Zillow's $4.1 billion revenue through Q3 2021. (*See* Ex. 2 at 1; Ex. 3 at 1; Ex. 5 at 1.)

| DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (No. 2:21-cv-01551-TSZ) – 14 | **Skadden, Arps, Slate, Meagher & Flom, LLP** 300 South Grand Avenue, Ste. 3400 Los Angeles, CA 90071 Phone: (213) 687-5000 | **Perkins Coie LLP** 1201 Third Avenue, Suite 4900 Seattle, WA 98101-3099 Phone: (206) 359-8000 Fax: (206) 359-9000 |

in renovation scope and pay led to inventory backlog. (Mot. 28-30.) The Opposition does not contend otherwise. (Opp. 34.) Thus, Plaintiffs fail to plead loss causation as a matter of law. (Mot. 28-30.)

Plaintiffs instead argue, while corrective disclosures are required when a plaintiff pleads a "causation theory based on market revelation of the fraud," the Complaint does not rely on market revelations to plead loss causation. (Opp. 35 n.33.) Not so. The Complaint affirmatively relies on the corrective disclosure loss causation theory Plaintiffs now seek to abandon: "the relevant truth concealed by Defendants' false and misleading statements began to be revealed to the market through a series of partial *corrective disclosures*." (CC ¶ 30; Opp. 34 ("[T]he relevant truth . . . was gradually revealed through four partial disclosures").) While, as Plaintiffs argue, the court in *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018) held that some theories of loss causation need not rely on corrective disclosures, such theories are irrelevant when a plaintiff pleads a revelation of fraud theory, as Plaintiffs do here. *See Uber*, 998 F.3d at 410. Because Plaintiffs abandon the lone loss causation theory plead in the Complaint, their claims fail on this basis alone.

Regardless, Plaintiffs newly-minted "materialization of the risk" theory does not help them. Under this theory, "[a] plaintiff can satisfy loss causation by showing that the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss." *First Solar*, 881 F.3d at 753 (citing *Nuveen Municipal High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).) Thus, a plaintiff claims it suffered losses when a "concealed risk" materialized. *Nuveen*, 730 F.3d at 1120. Here, the "very fact" that Plaintiffs claims allegedly caused their loss is that flaws in Zillow's pricing caused overpayment. (Opp. 34.) But Zillow *disclosed* the risk of an inability "to accurately value homes and manage inventory," and the risk that it was struggling to price its offers to stay in line with historic volatility in 2021. (Mot. 4-6.) Thus, the disclosure of the write-down and end of ZO was a materialization of a *known*, not concealed, risk. Therefore, it could not cause Plaintiffs' losses under that theory.[10]

---

[10] The October 4, 17, and 18 disclosures fail as the stock price quickly recovered. (Mot. 30). Plaintiffs wrongly claim it was not fast enough. (Opp. 34.) *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008) (no loss causation, stock recovered in 3 days); *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 695 (D.N.J. 2006) (5 days).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 15

Skadden, Arps, Slate, Meagher &
Flom, LLP
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

DATED: October 11, 2022

By: */s/ Peter B. Morrison*
Peter B. Morrison (admitted pro hac vice)
Virginia F. Milstead (admitted pro hac vice)
Winston Hsiao (admitted pro hac vice)
Raza Rasheed (admitted pro hac vice)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 521-5000
Peter.Morrison@skadden.com
Virginia.Milstead@skadden.com
Winston.Hsiao@skadden.com
Raza.Rasheed@skadden.com

By: */s/ Sean C. Knowles*
Sean C. Knowles, WSBA No. 39893
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
SKnowles@perkinscoie.com

*Attorneys for Defendants*
*Zillow Group, Inc., Richard Barton,*
*Allen Parker, and Jeremy Wacksman*

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
(No. 2:21-cv-01551-TSZ) – 16

**Skadden, Arps, Slate, Meagher &**
**Flom, LLP**
300 South Grand Avenue, Ste. 3400
Los Angeles, CA 90071
Phone: (213) 687-5000

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000