The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY JAEGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZILLOW GROUP, INC., RICHARD BARTON, ALLEN PARKER, and JEREMY WACKSMAN,<br><br>Defendants. | No. 2:21-cv-01551-TSZ<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL**<br><br>**NOTE ON MOTION CALENDAR:**<br>JUNE 14, 2024 |

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 3

    I.    Common issues predominate as Defendants fail to rebut *Basic*'s classwide presumption of reliance ................................................. 3

        A.    Defendants' front-end price impact arguments are irrelevant. .......... 3

        B.    Defendants fail to sever the link between their misstatements and the undisputed, back-end stock drops ......................................... 4

            1.    Defendants' assertions distort Plaintiff's liability theory .................................................................................. 5

            2.    Defendants have not proven that the October 17-18 disclosures are wholly unrelated to Plaintiff's claims. ........... 6

            3.    Defendants fail to prove that the October 31 and November 1 disclosures had no price impact. ....................... 8

            4.    Defendants do not show that the November 2 disclosures are totally unrelated to Plaintiff's claims. .......... 10

    II.    Defendants' typicality challenge also fails .................................................. 12

CONCLUSION ........................................................................................................ 14



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013)............................................................................................ 7

*In re Apple Inc. Sec. Litig.,*
2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ..................................... 4, 6, 7, 11

*Basic v. Levinson,*
485 U.S. 224 (1988)............................................................................................ 1

*In re BofI Holdings, Inc. Sec. Litig.,*
977 F.3d 781 (9th Cir. 2020) ...................................................................... 2, 10

*Bos. Ret. Sys. v. Alexion Pharms., Inc.,*
2023 WL 2932485 (D. Conn. Apr. 13, 2023)................................................. 1

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent
BioSolutions, Inc.,*
322 F. Supp. 3d 676 (D. Md. 2018) ................................................................ 1

*Edwards v. McDermott Int'l, Inc.,*
2024 WL 873054 (S.D. Tex. Feb. 29, 2024) ................................................. 7

*Ferris v. Wynn Resorts Ltd.,*
2023 WL 2337364 (D. Nev. Mar. 1, 2023) ................................................... 3

*In re Genius Brands Int'l, Inc. Sec. Litig.,*
97 F.4th 1171 (9th Cir. 2024) .......................................................................... 6

*Goldman Sachs Grp., Inc. v. Ark. Teach. Ret. Sys.,*
594 U.S. 113 (2021)................................................................................... 1, 2, 3

*Lloyd v. CVB Fin. Corp.,*
811 F.3d 1200 (9th Cir. 2016) ........................................................................ 2

*Mineworkers' Pension Scheme v. First Solar Inc.,*
881 F.3d 750 (9th Cir. 2018) .......................................................................... 6

*Mulderrig v. Amyris, Inc.,*
340 F.R.D. 575 (N.D. Cal. 2021)............................................................ 12, 14



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*In re NIO, Inc. Sec. Litig.*,
    2023 WL 5048615 (Aug. 8, 2023) .................................................................................. 13

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ............................................................ 4, 13

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. Jul. 31, 2015) ................................................................. 12

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276 (N.D. Cal. 2020) ......................................................................... 13, 14

*Smilovits v. First Solar Inc.*,
    119 F. Supp. 3d 978 (D. Ariz. 2015) ........................................................................ 10

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF DEFINED TERMS[1]

| Term | Definition |
|------|-----------|
| ¶ (in text) | Refers to paragraphs in the Corrected Consolidated Class Action Complaint (ECF No. 71). |
| 1Q21 | Zillow's first fiscal quarter of 2021—*i.e.*, the period from January 1, 2021, to March 31, 2021. |
| 2Q21 | Zillow's second fiscal quarter of 2021—*i.e.*, the period from April 1, 2021, to June 30, 2021. |
| Ex. | Refers to exhibits to the June 7, 2024 Declaration of Steve W. Berman submitted herewith. |
| Jaeger Tr. | Transcript from the April 4, 2024 deposition of Lead Plaintiff Jeremy Jeager, attached as Exhibit C to the Berman Declaration |
| Plaintiff | Lead Plaintiff Jeremy Jaeger |
| Opp. | Defendants' Opposition Brief (ECF No. 117) |
| Nye Report | Expert Report of Zachary Nye, Ph.D. (ECF No. 116-1) |
| Nye Reply | Expert Reply Report of Zachary Nye, Ph.D., attached as Exhibit A to the Berman Declaration |
| Sabry Report | Expert Report of Faten Sabry, Ph.D. (ECF No. 118-1). |
| Sabry Tr. | Transcript of the May 30, 2024 deposition of Dr. Sabry, attached as Exhibit B to the Berman Declaration |
| ZO | Zillow Offers |

---

[1] Throughout this brief, all emphasis is added unless stated otherwise.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

**INTRODUCTION**

Defendants concede that Rule 23's numerosity, commonality, adequacy, and superiority requirements are satisfied. Only (i) predominance and (ii) typicality are contested. Neither poses an issue here.

On predominance, Defendants do not dispute that almost every element of Plaintiff's claims—including falsity, scienter, materiality, loss causation, and damages—are common to the Class. They do not dispute that Plaintiff has proven every prerequisite to invoke *Basic v. Levinson*'s classwide presumption of reliance,[2] including market efficiency.[3] And there is no real question that Defendants' misrepresentations and omissions substantially impacted Zillow's stock, as Defendants concede that Zillow's stock dropped by statistically significant amounts on October 18, November 1-2, and November 3, 2021[4]—*i.e.*, after corrective information was allegedly revealed.

Faced with these strong facts supporting certification, Defendants mount a singular predominance challenge. They contend they can rebut *Basic's* presumption of reliance by showing their misstatements and omissions had ***no*** price impact. To do so, however, is a "daunting task,"[5] in which Defendants bear the burden of proving a ***complete lack of price impact***.[6] Therefore, to foreclose on certification, Defendants "must in fact ***sever the link***

---

[2]    485 U.S. 224 (1988).

[3]    *See* Sabry Rpt. ¶ 70.

[4]    *Id.* at App'x 3.

[5]    *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *11 (D. Conn. Apr. 13, 2023).

[6]    *See Goldman Sachs Grp., Inc. v. Ark. Teach. Ret. Sys.*, 594 U.S. 113, 114 (2021); *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent BioSolutions, Inc.*, 322 F. Supp. 3d 676, 687 (D. Md. 2018) (defendants must prove misstatements had "***no price impact whatsoever***").

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

between a misrepresentation and the price paid by the plaintiff."[7] The "mere production of *some evidence* relevant to price impact would rarely accomplish that feat."[8]

Defendants' opposition does not move the needle. On the front-end, Defendants' price impact assertions are immaterial to this case, as Defendants' misrepresentations, as pled, simply served to maintain inflation in Zillow's stock.[9] And on the back-end, Defendant's contentions distort both Plaintiff's theory of liability[10] and the corrective disclosures in this case.[11] Throughout their opposition, Defendants repeatedly assert the alleged disclosures were not *corrective* because they did not *explicitly name* ZO's renovation cuts or use of overlays. But the law is clear that corrective disclosures "need not precisely mirror the earlier misrepresentation."[12] Instead, there need only be a "causal connection between the material misrepresentation and the loss."[13]

Defendants fail to sever this causal connection completely. Here, Defendants misled investors to believe that in 2Q21, Zillow had improved its algorithmic model to predict future home values more accurately. In reality, Zillow knew its models could not predict future prices accurately and instead introduced human-driven overlays. ¶¶ 118-121, 153. Defendants' later disclosures—including that they were shuttering ZO and taking a massive write-down because they overpaid for 18,000 homes—were the direct, foreseeable consequence of ZO's overlays and renovation cuts. Indeed, Defendants expressly blamed the shutdown on their inability to fix their pricing models, admitting ZO had "been unable

---

[7]  *Goldman*, 594 U.S. at 125-26 (cleaned up).

[8]  *Id.*

[9]  *See* § I.A, *infra*.

[10]  *See* §.I.B.1, *infra*.

[11]  *See* § I.B.2-4, *infra*.

[12]  *In re BofI Holdings, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (citation omitted).

[13]  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1211 (9th Cir. 2016).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

to predict future pricing of homes to a level of accuracy that makes this a safe business to be in." ¶¶ 170-173. Defendants have not rebutted the link between their misstatements and the price of Zillow stock. They therefore cannot foreclose certification.

Defendants' cursory typicality challenge likewise fails. Defendants contend Plaintiff is subject to unique defenses because he purchased Zillow stock after some partial corrective disclosures (but before the final disclosure). But Ninth Circuit law is clear— post-disclosure purchases do not defeat typicality.

The Court should certify the Class.

## ARGUMENT

**I.    Common issues predominate as Defendants fail to rebut *Basic*'s classwide presumption of reliance.**

**A.    Defendants' front-end price impact arguments are irrelevant.**

Defendants attack price impact on the front end by noting Zillow's stock price did not rise following the misstatements.[14] This is neither surprising nor relevant. As alleged, Defendants' misrepresentations and omissions did not cause Zillow's stock price to rise, but instead "served to maintain the inflation in the price of Zillow" stock. ¶ 216. In such an inflation-maintenance scenario, "a misrepresentation [or omission] causes a stock price 'to remain inflated by preventing preexisting inflation from dissipating from the stock price.'"[15] "[T]he back-end price drop—what happen[ed] when the truth [wa]s finally disclosed—operates as an indirect proxy for the front-end inflation, or the amount that the misrepresentation fraudulently propped up the stock price."[16] Accordingly, the relevant inquiry here is whether there was back-end price impact.[17]

---

[14]    Opp. 9.

[15]    *Goldman*, 594 U.S. at 123 (citation omitted); *see also Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *6 (D. Nev. Mar. 1, 2023).

[16]    *See* Opp. 11 (quoting *Goldman*, 77 F.4th at 80).

[17]    Defendants suggest their August misstatements were immaterial because they repeated information Zillow previously disclosed on May 4, 2021. Opp. 4. Defendants are

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## B.    Defendants fail to sever the link between their misstatements and the undisputed, back-end stock drops.

Defendants do not dispute that Zillow's stock prices experienced statistically significant declines following three alleged corrective disclosures.[18] Nor do they contest that the alleged corrective information caused the stock price declines.[19] Instead, Defendants argue there is no back-end price impact because the corrective disclosures were purportedly "unrelated" to their misrepresentations and omissions.[20] Defendants claim this is because the corrective disclosures did not explicitly state that the overlays or the renovations reductions led to ZO's overpayments and backlogs.[21] But that is not the relevant inquiry.

"At this stage of the litigation—when Plaintiffs are not required to show loss causation—the alleged disclosure[s] need only 'relate to,' 'concern,' or be 'linked' to a specific alleged misrepresentation."[22] As discussed below, each corrective disclosure revealed new facts that related to, and were foreseeable consequences of, Defendants' misrepresentations and concealed conduct.

---

incorrect. On August 5, Zillow claimed pricing model and cost improvements *in 2Q21* were responsible for a novel spike in ZO's home acquisitions in 2Q21. ¶¶ 181-184. However, the May 4 earnings call covered *1Q21*, a period before Project Ketchup and when ZO acquisitions were languishing. ¶¶ 88, 109. Defendants also ignore the disclosure of confounding information on both dates. *See* Nye Reply ¶ 22.

[18]    *See* Sabry Tr. 75:8-76:17. To streamline issues, Plaintiff focuses herein on the three strongest corrective disclosures—October 17-18, October 31/November 1, and November 2—each of which was followed by a statistically significant stock price decline. *See* Nye Reply ¶¶ 25, 36; Sabry Rpt., App'x 3.

[19]    Opp. 14-15, 18-19.

[20]    Opp. 3.

[21]    *Id.*

[22]    *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *18 (S.D.N.Y. Jan. 26, 2021); *see also In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *9 (N.D. Cal. Feb. 4, 2022) (finding price impact where "disclosures … directly related to the subject matter of defendants' false assurance").

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

### 1. Defendants' assertions distort Plaintiff's liability theory.

In assessing whether Defendants severed the link between their misstatements and the stock price drops on the back end, it first bears repeating what this case is about.

On August 5, Defendants announced that in 2Q21, ZO nearly doubled the homes it purchased in 1Q21. ¶ 151. Defendants attributed this change to "progress [ZO] made in **strengthening [its] pricing models**" and "progress this quarter in **improving [ZO's] pricing models**," which "drove rapid gains in conversion rates." ¶ 182. This language misled investors to believe that ZO had improved its algorithmic models for predicting future home values to better adapt to market conditions.[23] ¶ 28. In reality, ZO's pricing model was not accurately predicting future home prices, and ZO's acquisitions spike stemmed from overlays leadership imposed on top of ZO's pricing models to drive volume. ¶ 187. These overlays were not sharp or precise designs. Nor did they improve the foundational strength of Zillow's models. They were a blunt and hastily implemented tool that could automatically add as much as 7% on top of analyst-recommended prices. ¶ 102.

Defendants also claimed that Zillow had made "largely durable operational improvements" in "renovation, holding, and selling costs." ¶ 184. Unbeknownst to investors, these operational "improvements"—which included lowering contractor rates and decreasing renovation scopes—caused contractors to refuse work on Zillow properties. ¶¶ 127-128. As alleged, Zillow's inability to complete timely renovations created a massive backlog of homes on Zillow's balance sheet and further exposed Zillow to risks from a housing market slowdown. ¶ 128.

---

[23]  *See* Nye Reply ¶¶ 19-22 (documenting positive analyst reactions to the misstatements).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**2.     Defendants have not proven that the October 17-18 disclosures are wholly unrelated to Plaintiff's claims.**

On Sunday, October 17, 2021, Bloomberg reported ZO had paused home acquisitions. ¶ 221. Before markets opened the next day, Zillow confirmed the reports, disclosing that "[d]ue to a ***backlog in renovations and operational capacity constraints***," ZO "will not sign any new, additional contracts to buy homes through the end of the year." *Id.* On this news, Zillow's stock prices experienced statistically significant declines.[24] Commentators attributed the declines to ZO's purchasing pause.[25]

Defendants' expert concedes she identified no other potential causes for Zillow's stock price decline on October 18.[26] Defendants nevertheless argue that none of that price decline can be tied to their misstatements. Defendants contend this is because the disclosures did not explicitly state that ZO used overlays instead of meaningfully improving its pricing models or that ZO's renovations cuts caused the disclosed backlog.[27] But the law in the Ninth Circuit is clear: a corrective event "need not 'precisely mirror' the misrepresentation."[28] As such, an event can be corrective even where it discloses a consequence of concealed information, even if that connection is not made explicitly in the disclosure.[29]

---

[24]    *See* Nye Reply ¶ 25.

[25]    *Id.* ¶ 26.

[26]    Sabry Tr. 172:9-20.

[27]    Opp. 14-15 (suggesting disclosures needed to identify Zillow's "use of GPOs or reduced renovation scopes" to find back-end price impact). *But see In re Apple*, 2022 WL 354785, at *9 ("This Court is not persuaded by arguments that 'this disclosure only mentioned one thing; discussion of that one thing in no way indicates or reveals a problem with this other thing; ergo, no revelation of fraud.'") (citation omitted).

[28]    *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024).

[29]    *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753-54 (9th Cir. 2018) ("A plaintiff may [] prove loss causation by showing that the stock price fell upon the revelation of an earnings miss, even if the market was unaware at the time that fraud had concealed the miss.").

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Here, the backlog disclosed on October 17-18 was the direct and natural consequence of the information Defendants concealed. ¶¶ 187, 223. Because of renovation cost cuts, contractors refused to work on Zillow homes, causing backlogs; and because of reliance on overlays, ZO had amassed a voluminous, overpriced housing supply that it could not offload without a pause. ¶ 187.[30] Commentary following the October 17-18 disclosures fully supports this conclusion.[31] Although Zillow blamed the pause on purported macroeconomic conditions, numerous commentators expressed skepticism, noting ZO's competitors had not experienced similar problems.[32] Even with incomplete information about Defendants' misconduct, three analysts posited that "potential algorithm errors" were partially responsible for ZO's announced acquisitions pause.[33] Dr. Sabry could not disavow that backlogs were caused by overlays or renovation cuts.[34]

In all events, Defendants' alternative narrative—that the backlog was caused entirely by market conditions—is an unsubstantiated merits claim that must await another day.[35] Defendants come nowhere close to proving—as they must—that ***none*** of the price impact from this corrective disclosure was connected to the concealed information.[36]

---

[30] *See In re Apple*, 2022 WL 354785, at *9 (finding price impact where "partial disclosures … were directly related to the subject matter of defendants' false assurance").

[31] *See* Opp. 15 (contending otherwise).

[32] *See* Nye Reply ¶¶ 24-26 (quoting article noting "Zillow's biggest competitor seems to be handling high volumes just fine" and attributing backlog to ZO's "mismanagement"); *id.* ¶ 32 (analyst noting the need to "slam the brakes entirely" suggested "managerial, operational and execution issues").

[33] *See* Sabry Rpt. ¶ 32.

[34] Sabry Tr. 186:5-187:25.

[35] *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

[36] Defendants' reliance on out-of-Circuit authority fails to persuade otherwise. The statements here are far more specific than the "generic" platitudes at issue in *Goldman*, 77 F.4th at 102. In *Edwards v. McDermott Int'l, Inc.*, 2024 WL 873054 (S.D. Tex. Feb. 29, 2024), the court withdrew its opinion, including on price impact.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

### 3.    Defendants fail to prove that the October 31 and November 1 disclosures had no price impact.

On Sunday, October 31, KeyBanc reported, based on a deep dive analysis into 650 homes, that many homes in Zillow's inventory were worth less than the Company paid for them. ¶ 227. The next day, Bloomberg reported that Zillow was "looking to sell about 7,000 homes" to investors for $2.8 billion "as Zillow seeks to recover from an operational stumble that saw it buy too many houses, with many now being listed for less than it paid." ¶ 228. On this news, Zillow stock suffered statistically significant declines on November 1 and November 2.[37] Commentators attributed these declines to the KeyBanc and *Bloomberg* reports.[38]

Defendants nevertheless argue they have disproved price impact, asserting that the October 31 and November 1 disclosures were also not connected to their statements or misconduct. Yet again, they myopically construe Plaintiff's liability theories. Plaintiff alleges that the overpayments KeyBanc disclosed were the direct result of Zillow's decision to apply overlays to drive volume rather than fixing its algorithms to accurately predict home price appreciation, as they had told investors they had. ¶ 110. Indeed, the report explicitly noted that ZO had failed to accurately anticipate market shifts and "may have leaned into [home price appreciation] at the wrong moment" while its competitors "struck a note of caution" and "began to adjust its pricing to better reflect normalizing HPA trends."[39] Likewise, Zillow's offloading of 7,000 homes to private equity foreseeably stemmed from its decision to "systematically overrule Zillow's highly-touted [pricing] algorithm in order to drive volume," ¶ 17, thereby causing ZO to "significantly overpay for thousands of homes." ¶ 100. *See also* ¶¶ 187, 226-229.

---

[37]   Nye Reply ¶ 36.
[38]   *Id.* ¶ 37 (collecting reports).
[39]   *Id.* ¶ 34.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Following these reports, analysts recognized Zillow was potentially exiting the iBuying business due to "undisciplined execution" and "paying up" to "win more homes.[40] RBC Capital went so far to note that if ZO intended to continue, it would likely need to "*re-tool[] its operations* … with *a more rational bidding algorithm*, better access to sustainable local labor and *better home renovation supply procurement agreements* in place to mitigate future risks."[41] Defendants' expert also repeatedly testified that, even though overlays and renovation cuts were not specifically mentioned in the alleged disclosures, analysts understood that "something [wa]s not working in the process that Zillow [wa]s using to acquire homes, given that they [we]re, on average, they [we]re buying houses at prices higher than the prices they could sell the homes for."[42]

Defendants also argue that the information reported by KeyBanc was already fully digested by the market.[43] To start, Defendants concede the information disclosed in the Bloomberg report—including Zillow's intent to offload 7,000 homes—was new information.[44] They thus cannot disprove price impact on these disclosures' impact date (November 1 and 2). That aside, Defendants' argument cannot be squared with the multiple commentators who attributed price declines to the KeyBanc report or the fact the report was widely discussed in the media for weeks after its publication.[45] Neither Defendants nor their expert identify any reasons for this phenomenon. Nor do they identify any other information that can explain the statistically significant stock price reaction on November 1-2.[46] As such, they come nowhere close to disproving price impact for these dates.

---

[40] *See id.* ¶ 44.

[41] *Id.*

[42] Sabry Tr. 36:5-40:25.

[43] Opp. 17.

[44] Sabry Tr. 205:21-206:9.

[45] *See* Nye Reply ¶¶ 45-46.

[46] Sabry Tr. 205:21-207:5.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

### 4. Defendants do not show that the November 2 disclosures are totally unrelated to Plaintiff's claims.

On November 2, 2021, Zillow announced it would wind down ZO and write down nearly $569 million in inventory because it had overpaid for nearly 18,000 homes. Defendants blamed the shutdown on their inability to fix their pricing models, admitting Zillow had "been unable to predict future pricing of homes to a level of accuracy that makes this a safe business to be in." ¶ 235. They also pinned responsibility on the previously concealed backlogs, noting "a meaningful backup in our processing of homes in [the] Zillow pipeline." ¶ 237. Defendants do not dispute that Zillow's stock plummeted following this announcement or that the allegedly corrective information caused that price decline.[47]

Instead, Defendants rehash flawed arguments to assert that the pricing accuracy problems and "significant capacity and demand planning challenges" that underlay the announced wind-down and write-offs in no way related to their misstatements or misconduct. Defendants note, for example, that the November 2 disclosures "say nothing" specific about overlays or "any difficulties with contractors from reduced renovations."[48] But a corrective disclosure need not be an admission of fraud or precisely mirror the alleged misstatement or omission.[49] Rather, as the *First Solar* court explained, there need only be some causal connection between the concealed information and the disclosure.[50]

---

[47] *See* Nye Reply ¶ 53; Sabry Tr. 215:2-21.

[48] Opp. 18-19.

[49] *See BofI*, 977 F.3d at 790.

[50] *See Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 996-98 (D. Ariz. 2015), *aff'd* 881 F.3d 750 ("If … the company's revenues fail to meet projections because of … the very fact misrepresented—and the stock loses value as a result, the misrepresented fact has led to the plaintiff's loss. This is true even if the market does not learn that the company lied.").

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Here, the massive write-off Zillow took because it overpaid for 18,000 homes was the direct and proximate consequence of the concealed overlays. ¶¶ 187, 238. Indeed, Zillow admitted that it was shuttering ZO because its pricing models had been unable to accurately forecast future home prices, ¶ 234, belying Defendants' earlier misstatements that ZO had improved the model's ability to do just that.[51] Defendants disclosed ZO had overpaid, on average, by 5-7%, ¶ 170—approximately the same percentage applied by ZO's overlays. ¶ 102. Defendants also pinned the shutdown on ZO's backlog, which was a direct result of the overlays and renovations cost cuts.[52]

Defendants' expert speculates that, based on previously disclosed information, some analysts could have inferred a possible write-down.[53] "Notably, however, she has not identified a single analyst or news commentator that predicted Zillow's asset impairments and/or projected losses prior to their disclosure on November 2, 2021."[54] Rather, analysts were surprised by the write-down, which they had not accounted for in their estimates, and commentators attributed the price decline to the write-down disclosure.[55]

Defendants also claim that analysts failed to connect the November 2 disclosures to any misstatements or omissions, even though at least 17 analysts identified Zillow's "inability to forecast housing prices" as a reason for Zillow's reported wind-down.[56]

Finally, Defendants contend the lack of market reaction following two November 2021 post-mortems on ZO's downfall confirm a lack of price impact. But as Dr. Nye noted, by this time, ZO had already fully disclosed the consequences of these actions—the wind-

---

[51] *See In re Apple*, 2022 WL 354785, at *9 (finding price impact were disclosures "directly related to the subject matter of defendants' false assurance").

[52] *See* §§ I.B.2 & I.B.3, *supra*.

[53] Opp. 19-20.

[54] Nye Reply ¶ 62.

[55] *Id.* ¶ 63.

[56] Sabry Rpt. ¶ 160.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

down and $587 million write-down; accordingly, analysts "no longer assign[ed] any value to the Homes [ZO] business."[57] Because investors did not assign value to ZO, further reports about ZO's defunct business line would not be expected to impact Zillow's stock price.[58] Instead, these reports corroborate that ZO's wind-down resulted from the concealed information, rather than solely from macroeconomic factors. *Business Insider*'s sources reported, for example, that ZO's problems had "less to do with … unpredictable swings in prices and more to do with the overexuberance of human managers" who "failed to heed signs that Project Ketchup was prompting it to pay too much for homes." ¶ 105. Likewise, sources reported that "***much of the company's labor problems stemmed from those strains brought on by Project Ketchup, not the economywide shortages*** that top Zillow executives … said were responsible for its backlog." ¶ 131.

In sum, Defendants come nowhere close to satisfying their burden to prove no price impact whatsoever for all three corrective disclosures. *Basic*'s presumption of reliance thus applies, and common questions predominate.

## II.   Defendants' typicality challenge also fails.

Defendants' typicality challenge is made up of two parts, neither of which forecloses on certification.

First, Defendants argue that Plaintiff is subject to a "unique defense" because he purchased Zillow stock after certain partial corrective disclosures.[59] But as numerous courts have held, "post-disclosure purchases are not, by themselves, sufficient to render a proposed representative atypical."[60] Nor do these purchases indicate that the concealed

---

[57]   Nye Reply ¶ 69.

[58]   *Id.*; *see also* Sabry Tr. 243:6-244:16 (conceding articles did not report that Zillow was taking a larger write-down or had overpaid more than previously reported).

[59]   Opp. 21-22.

[60]   *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 581 (N.D. Cal. 2021); *see also Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 346-48 (C.D. Cal. Jul. 31, 2015) (rejecting

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

information was "not a factor" in Plaintiff's purchasing decision. "That [Plaintiff] chose to purchase additional stock after the corrective disclosure and … the related drop in stock price simply shows that with full information, [he] was willing to invest in [the company] at a lower price, not that the fraud was irrelevant to [his] original decision to buy stock at the inflated price."[61]

In any event, Plaintiff's mid-day trading establishes the opposite. The truth concealed by Defendants' statements was not fully revealed until **after** market close on November 2, 2021. Plaintiff made no purchases after that final disclosure. And within weeks, he sold his entire position in Zillow.[62] Plaintiff's trading thus "does not give rise to a unique defense, let alone one that would distract from the trial."[63]

Second, Defendants distort Plaintiff's testimony to argue that it is "at odds" with his allegations.[64] Defendants claim Plaintiff testified that he believed Zillow's pricing model was accurate.[65] But this testimony concerned Zillow's Zestimate—an estimate of a home's *current* value—not ZO's ability to predict *future* home prices via its pricing model.[66] Defendants' follow-on argument—that Plaintiff testified the overlays were "immaterial"— finds zero support in the record.[67] Plaintiff testified that, with respect to the Zestimate, he

---

typical challenge based on a post-disclosure purchase made when plaintiff "still believed in the company").

[61] *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *7 (Aug. 8, 2023); *see also SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020) (post-disclosures "do not prove that plaintiff would have paid the higher *pre*-disclosure price had it known of defendants' misrepresentations").

[62] ECF No. 118-2; *Pearlstein*, 2021 WL 253453 ("Defendants do not cite a single case— nor is this Court aware of one—holding that a lead plaintiff [is atypical] where that plaintiff made securities purchases after an alleged partial corrective disclosure but before the final corrective disclosure.").

[63] *In re NIO*, 2023 WL 5048615, at *8.

[64] Opp. 22-23.

[65] Opp. 23.

[66] Jaeger Tr. 27:22-28:5; *see also* § I.B.1, *supra* (explaining Plaintiffs' liability theory).

[67] Opp. 23.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

did not know exactly "what their algorithm is."[68] He never suggested he knew ZO was putting overlays on top of its models to drive growth, or that the concealed information about accuracy was immaterial.

Defendants' contention regarding "durable" renovation cost improvements also fails. These statements were misleading because Defendants "failed to disclose that Zillow's 'cost improvements' were not 'durable,' but instead were causing significant negative impact to the Company, including that its contractors had begun declining to take Zillow jobs, creating a massive backlog of renovation jobs that it could not complete, which in turn impeded Zillow's ability to quickly resell homes and drove up its holding costs." ¶ 27. Nothing in Plaintiff's testimony is "at odds" with these allegations.[69] He testified only that Zillow had disclosed overall reduced renovations costs,[70] and that it makes sense to be "thoughtful" about which renovation to undertake.[71] Nowhere did he indicate that ZO's ballooning backlog was disclosed or that it was a positive development.[72]

In sum, "Defendants have failed to offer sufficient evidence to establish that [Plaintiff] would be subject to and preoccupied with unique defenses to the detriment of absent class members."[73] Typicality is satisfied.

## CONCLUSION

This Court should (i) certify this case as a class action; (ii) appoint Jeremy Jaeger as Class Representative; and (iii) appoint Hagens Berman as Class Counsel.

---

[68] Jaeger Tr. 28:6-25.

[69] Opp. 23.

[70] Jaeger Tr. 177:1-6.

[71] *Id.* 179:9-18.

[72] In *Mulderrig*, 340 F.R.D. at 581, the plaintiff made statements demonstrating that he *knew* about the allegedly concealed information *when* he was trading.

[73] *Symantec*, 335 F.R.D. at 284.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

DATED: June 7, 2024                    Respectfully submitted,

By: /s/ *Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
By: /s/ *Catherine Y. N. Gannon*
Catherine Y. N. Gannon (WSBA No. 47664)
By: /s/ *Karl P. Barth*
Karl P. Barth (WSBA No. 22780)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com
Email: karlb@hbsslaw.com

Reed R. Kathrein (*pro hac vice*)
Lucas E. Gilmore (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Raffi Melanson (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
Email: raffim@hbsslaw.com

*Lead Counsel for Lead Plaintiff Jaeger*

Stacey M. Kaplan (*pro hac vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: skaplan@ktmc.com



Gregory M. Castaldo (*pro hac vice*)
Evan R. Hoey (*pro hac vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: gcastaldo@ktmc.com
Email: ehoey@ktmc.com

*Additional Counsel for Lead Plaintiff Jaeger*

## <u>WORD LIMIT CERTIFICATION</u>

I certify that this memorandum contains 4,184/4,200 words, in compliance with the Local Civil Rules.

DATED: June 7, 2024

*/s/ Steve W. Berman*
Steve W. Berman



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX