**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 26 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEREMY JAEGER,<br><br>　　　　Plaintiff - Appellee,<br><br>　v.<br><br>ZILLOW GROUP, INC.; RICHARD<br>BARTON; ALLEN PARKER; JEREMY<br>WACKSMAN,<br><br>　　　　Defendants - Appellants. | No. 24-6605<br><br>D.C. No.<br>2:21-cv-01551-TSZ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted August 14, 2025
Anchorage, Alaska

Before: GRABER, OWENS, and R. NELSON, Circuit Judges.

Defendant Zillow Group, Inc. appeals the district court's decision to grant

class certification under Federal Rule of Civil Procedure 23(c)(1).  We review the

district court's order for abuse of discretion.  *See Lara v. First Nat'l Ins. Co. of*

*Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022).  We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.  The district court properly applied the relevant legal standard when determining whether Zillow rebutted the presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224, 246–47 (1988).  Under *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113, 119 (2021), "price impact" analysis serves as the appropriate standard at the class certification stage.  Price impact analysis allows the defendant to rebut the *Basic* presumption at the class certification stage by showing—with the district court as the fact finder— that the "alleged misrepresentation did not actually affect the market price of the stock." *Id.* (citation omitted).  Loss causation, on the other hand, is a merits concept similar to proximate cause, which requires the plaintiff to show that the alleged misrepresentations caused the price of the stock the plaintiff purchased to become inflated, and that the inflation caused economic loss when the statements were revealed as false. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020).

In an inflation-maintenance case, both standards require courts to consider substantially similar questions.  Because the price impact standard assumes that a back-end "price drop is equal to the amount of inflation maintained by the earlier misrepresentation," *Goldman*, 594 U.S. at 123, courts applying that standard may demand a closer fit in the level of generality and substance when comparing front- and back-end statements, *compare id.*, *with BofI*, 977 F.3d at 790 ("[T]o be

24-6605

corrective, a disclosure need not precisely mirror the earlier misrepresentation." (citation and internal quotation marks omitted)).  But that does not mean the district court erred by looking to loss-causation case law for guidance.  *Cf. Goldman*, 594 U.S. at 123 (citing *In re Vivendi, S. A. Sec. Litig.*, 838 F.3d 223, 233–37, 253–59 (2d Cir. 2016)).

Nor did the district court err by considering circumstantial evidence of the price drop immediately after the alleged corrective disclosures.  *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018) (per curiam). "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss."  *Id.* at 753 (citation omitted).  Even if a later disclosure does not refer directly to an alleged misrepresentation, it may reveal "true facts concealed" by such misrepresentation.  *BofI*, 977 F.3d at 790.  If so, the "truth [becomes] known," *id.* at 789 (citation omitted), and a changed market price may indicate how the market would have reacted had the defendant told the truth from the start.  "[A] court cannot conclude that Rule 23's requirements are satisfied without considering *all* evidence relevant to price impact."  *Goldman*, 594 U.S. at 122.  Such evidence includes the circumstantial evidence of a price drop.

24-6605

2. The district court found that Zillow failed to rebut the *Basic* presumption by a preponderance of the evidence. That finding was not illogical, implausible, or without support in the record. *See White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024). Zillow contends that it never revealed the use of manual overlays until November 9 and 17, 2021—after the close of the class period. But this contention alone does not mean that the district court abused its discretion by determining that the alleged misrepresentations were sufficiently related to the back-end disclosures. "It is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading." *BofI*, 977 F.3d at 790. The disclosures revealed new information showing the extent of Zillow's home-pricing struggles.

The alleged misrepresentations suggest that Zillow, while struggling to get its pricing model right, had made "progress . . . in strengthening [its] pricing models." Yet a few months later, Zillow closed the entire home-buying side of its business because it had been "unable to accurately forecast future home prices," and its pricing algorithm's "observed error rate" was "far more volatile than . . . expected."

The back-end disclosures thus revealed new information about how Zillow's home-pricing struggles threatened the business and suggested that its earlier statements may have obscured how Zillow's pricing model misfired. Zillow's

front-end and back-end statements are matched enough under *Goldman*. *See* 594 U.S. at 122–23.

Zillow's argument that the KeyBanc report did not disclose new information about Zillow's overpayment for houses also does not support an abuse of discretion. The record suggests that this information was not widely discussed or accessible until the KeyBanc report was released. *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1186 (9th Cir. 2024) ("[S]ecurities issuers should not escape liability for misrepresentations merely because . . . corrective information was publicly available on some webpage tucked in a deep corner of the internet.").

3. Finally, Zillow did not rebut the presumption that the district court "consider[ed] all of the evidence." *W. Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1285 (9th Cir. 1984). The district court characterized some evidence as relating "to loss causation and the merits," but that does not mean it refused to consider it. Indeed, the district court said that the same evidence "does not preclude class certification," and thus demonstrated that the court considered it. And the district court did not ignore the Sabry report, as it cited it several times.

**AFFIRMED.**

5                                    24-6605